IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARC X. RIVERS (MUHAMMAD),<br>Plaintiff | )<br>)<br>) | C.A. No. 06-284 Erie |
| v. | )<br>) | District Judge Cohill<br>Magistrate Judge Baxter |
| LT. WILLIAM MCCONNELL, et al.,<br>Defendants. | )<br>)<br>) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.  RECOMMENDATION

It is respectfully recommended that:

1. The Motion to Dismiss filed by Defendant Luzerne County Children and Youth Services [Document # 39] be granted; and

2. The Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendants McConnell, Cole, Bitner, Brooks, Clark, Giroux, Mahlmeister, Pennsylvania Board of Probation and Parole, and "Unknown-Named Members" of the Pennsylvania Board of Probation and Parole [Document # 36] be granted.

II.  REPORT

A.  Relevant Procedural History

Plaintiff Marc X. Rivers (Muhammad), a prisoner presently incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, on December 4, 2006. Named as Defendants in Plaintiff's original complaint are: Lieutenant William McConnell ("McConnell"), a corrections officer at SCI-Albion; Luzerne County Children and Youth Services ("Luzerne"); and William Cole, a hearing examiner at SCI-Albion. In his original complaint, Plaintiff alleged that Defendants violated his constitutional rights by conspiring to prevent him from having contact with his son, to have his parental rights terminated, and to deny him parole. (Document # 3, Complaint, at pp. 5-10). As relief for his claims, Plaintiff sought monetary damages.

On March 23, 2007, Plaintiff filed an amended complaint, which did nothing more than provide a more detailed breakdown of the monetary damages sought by Plaintiff. (Document # 8, Amended Complaint, at pp. 12-13). On May 29, 2007, Plaintiff filed a second amended complaint, essentially reiterating the same claims set forth in his original complaint, but adding the following Defendants: Nancy A. Giroux, Deputy Superintendent at SCI-Albion ("Giroux"); Michael Mahlmeister, Major of the Guard at SCI-Albion ("Mahlmeister"); Michael R. Clark, CCPM ("Clark"); Marilyn Brooks, Superintendent at SCI-Albion ("Brooks"); Robert S. Bitner, Chief Hearing Examiner ("Bitner"); and the Pennsylvania Board of Probation and Parole ("PBPP"). (Document # 19, Second Amended Complaint).

In response to Plaintiff's Second Amended Complaint, Defendant Luzerne and Defendants McConnell, Cole, Giroux, Mahlmeister, Clark, Brooks, Bitner, and PBPP filed motions to dismiss (Document ## 29 and 20, respectively). However, Plaintiff responded by filing yet another amended complaint, providing a more detailed account of his claims, and purporting to add as Defendants "Unknown-Named Members of the Commonwealth of Pennsylvania Board of Probation and Parole." (Document # 32, Third Amended Complaint). As a result, Defendants' motions to dismiss Plaintiff's Second Amended Complaint were dismissed as moot.

In his Third Amended Complaint, Plaintiff claims that Defendants have violated the following constitutional rights in connection with their alleged conspiracy to deprive him of his parental rights and to deny him parole: (I) First Amendment rights to free speech, free exercise of religion, and access to courts; (ii) Sixth Amendment right to self-representation; (iii) Thirteenth Amendment right to be free from slavery; (iv) Fourteenth Amendment rights to due process and equal protection of the law; and (v) the Privileges and Immunities Clause of Article III of the Constitution. In addition, Plaintiff claims that Defendants' alleged actions were in retaliation for his filing of a response to Defendant Luzerne's petition to terminate his parental rights in the Luzerne County Court of Common Pleas.

In response to Plaintiff's Third Amended Complaint, Defendants McConnell, Cole, Giroux, Mahlmeister, Clark, Brooks, Bitner, PBPP, and "unknown-named members" of the PBPP have filed a motion to dismiss or, in the alternative, motion for summary judgment. (Document # 36). Defendant Luzerne has also filed a motion to dismiss Plaintiff's Third Amended Complaint, essentially restating its previous motion to dismiss Plaintiff's Second Amended Complaint. (Document # 39). Plaintiff has filed briefs in opposition to both motions. (Document ## 44 and 47). This matter is now ripe for consideration.

### B.    Relevant Factual History

On May 30, 2002, the Court of Common Pleas of Luzerne County, Pennsylvania ("Luzerne County Court") entered an Order granting temporary custody of Plaintiff's son, Alonzo Allen ("Allen"), to Allen's great aunt and uncle, and suspending Plaintiff's visitation rights. (Document # 24, Exhibit A, pp. 3-4). Allen was subsequently placed in the care of Defendant Luzerne on November 8, 2002. (See Document # 47, Exhibit 3 at p. 3).

On or about August 3, 2005, SCI-Albion issued Plaintiff a "Notice to Cease Communications" stating that Plaintiff was given a "Direct Verbal Order to cease from any veiled threats [toward Luzerne] and to state [his] concerns simply and clearly." (Document # 36, Exhibit C). The Notice further informed Plaintiff that "any attempt to send threats by telephone or in writing with [Luzerne] will be considered a direct violation of the verbal and written orders" he received and would subject him to disciplinary action. (Id.).

On or about March 15, 2006, Defendant Luzerne filed with the Luzerne County Court a Petition to Terminate Parental Rights seeking to have the parental rights of Allen's natural mother and Plaintiff terminated. (Document # 24, Exhibit B, pp. 10-16). A hearing on the Petition was originally scheduled to be held on April 3, 2006, but was subsequently rescheduled for September 7, 2006. (Id., Exhibit C, p. 18). In the meantime, Defendant Luzerne filed a Petition for Permanency Hearing on or about May 9, 2006, to have the disposition and

placement of Allen reviewed by the Luzerne County Court, and a Permanency Hearing was scheduled to be held on May 31, 2006. (Id., Exhibit G, p. 26).

On May 25, 2006, Plaintiff filed a lengthy response to Defendant Luzerne's Petition with the Luzerne County Court, which contained the following statements:

> If you don't stop in your course of action of illegally trying to take my son Alonzo, from me, and if, as a result, my son suffers any harm while in your illegal custody, every lie that has been told by you, and agency officials, every unlawful decision you've ever made against me in these proceedings, so help me God in the Name of Allah, you will meet your death.
>
> [Y]ou take my son from me illegally, in the name of Allah and his Messenger, I am taking your life.
>
> Now this ain't about no money. Put my son up for adoption illegally and I'm gonna murder you and this goes for any Judge who signs that illegal Order.

(See Document # 36, Exhibit B at pp. 24, 26-27).

Given the threatening nature of the above statements, Defendant Luzerne forwarded a copy of the letter to the Luzerne County District Attorney's Office on May 31, 2006. (Document # 36, Exhibit A). In addition, a copy of Plaintiff's response was subsequently forwarded by Defendant Luzerne to SCI-Albion. Upon receiving a copy of Plaintiff's response from Defendant Luzerne, Defendant McConnell conducted an interview with Plaintiff on September 4, 2006, to inform him that the contents of the response violated the Notice to Cease Communications issued on or about August 3, 2005. During the interview, Plaintiff admitted that he sent the response. As a result, Defendant McConnell issued a misconduct report on September 14, 2006, charging Plaintiff with refusing to obey an order and unauthorized use of the mail or telephone. (Document # 24, Exhibit L, p. 47). After a disciplinary hearing held on September 18, 2006, Defendant Cole found Plaintiff guilty of both charges and sanctioned him to 60 days of disciplinary custody. (Id. at p. 53-54).

**C.      Standards of Review**

      **1.      Motion to Dismiss**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).   The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974).   As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).   The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).   The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).   Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S.  265, 286 (1986).   "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965.   Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

### 2. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance -

which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949

7

F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### D. Discussion
#### 1. First Amendment Right to Free Speech Claim

Plaintiff claims that the misconduct issued by Defendant McConnell on September 14, 2006, violated his First Amendment right to freedom of speech. In response, Defendants argue that threats are not a constitutionally protected form of speech. This Court agrees.

Although freedom of speech is a "natural and inherent" right afforded all citizens of the United States, the right is certainly not absolute. Gilbert v. State of Minnesota, 254 U.S. 325, 332 (1920). While a principal function of free speech under our system of government is to invite dispute and even stir people to anger, Terminiello v. City of Chicago, 337 U.S. 1, 4 (1949), the First Amendment has never protected:

> face-to-face words plainly likely to cause a breach of the peace by the addressee, words whose speaking constitute a breach of the peace by the speaker - including 'classical fighting words,' words in current use less 'classical' but equally likely to cause violence, and other disorderly words, including profanity, obscenity and threats.

Chaplinsky v. State of New Hampshire, 315 U.S. 568, 573 (1942). In particular, "a 'true' threat, where a reasonable person would foresee that the listener will believe he will be subjected to physical violence upon his person, is unprotected by the first amendment." U.S. v. Orozco-Santillian, 903 F.2d 1262, 1265-66 (9th Cir. 1990)(citation omitted)(finding repeated threats to INS agents from deportable alien were unprotected). See also In re Parmalee, 63 P.3d 800, 807-08 (Wash.Ct.App. 2003)(finding inmate's language, referring to correctional officer as a "piss ant" and "shithead" who should be fired "before his attitude gets him f***ed up," was a true

8

threat and, thus, not protected speech).

In this case, Plaintiff was found guilty of misconduct for, essentially, making threatening statements in his response to Defendant Luzerne's Petition for Permanency Hearing. Plaintiff attempts to justify his actions by arguing that his statements were made in the context of a legal document and were, thus, somehow constitutionally protected. This argument falls on deaf ears. Certainly a reasonable person would foresee that the recipient of Plaintiff's threats would believe Plaintiff intended to commit "physical violence." In fact, Defendant Luzerne found Plaintiff's threatening comments so alarming that it immediately forwarded a copy of Plaintiff's response to the Luzerne County District Attorney's Office. (Document # 36, Exhibit A). Accordingly, Plaintiff's threatening comments constituted "true" threats unprotected by the First Amendment, and his freedom of speech claim should, therefore, be dismissed.

### 2. First Amendment Right to Free Exercise of Religion Claim

Plaintiff alleges that Defendants have violated his First Amendment right to freely exercise his religious beliefs; however, the factual and legal bases for this claim are somewhat nebulous. The most defined statement of Plaintiff's free exercise claim may be found in his inmate response to the misconduct that was issued by Defendant McConnell on September 14, 2006. Within this response, Plaintiff makes the following claim:

> ... I can represent and express myself in court and legal documents in any manner I chose [sic] no matter how repugnant you may believe my religious views about murder and killing and death to be. The United States Supreme Court has said "free exercise of religion includes right to believe and profess whatever religious doctrine one desires."... "Government may neither compel affirmation of repugnant religious beliefs nor penalize or discriminate against individuals or groups because they hold views abhorant [sic] to authorities."...

(Document # 24, Exhibit L, p. 49)(citations omitted).

This claim is clearly misguided. While the Court recognizes Plaintiff's right to freely express his religious beliefs, within appropriate boundaries, threatening to murder anyone who puts his son up for adoption is not an expression of a religious belief; it is a terroristic threat.

9

Plaintiff's attempt to characterize such a threat as a constitutionally protected religious practice or expression of religious belief bastardizes the spirit and intent of the Fourteenth Amendment's free exercise clause, and should be dismissed.

### 3. First Amendment Access to Courts Claim

While inmates have the right to adequate, effective, and meaningful access to the courts, Bounds v. Smith, 430 U.S. 817, 828 (1977), the United States Supreme Court restricted who may bring an access to courts claim in Lewis v. Casey, 518 U.S. 343, 355 (1996).[1] The Lewis Court held that, in order to state a claim for a denial of the right of access to the courts, a plaintiff must show actual injury. Id. The plaintiff must show that, as a result of the defendant's actions, he lost the ability to present an "arguably actionable claim" against the validity of his sentence under direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action. Id. at 356. The Third Circuit has further described the *Lewis* holding:

> to be able to bring a viable claim, the plaintiff inmates ha[ve] to show direct injury to their access to the courts. The Court explained that an inmate could show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or [he could show] that he had suffered arguably

---

[1]

The Lewis Court opined:

> ...*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355.

10

> actionable harm that he wanted to bring before the courts, but was so stymied by the inadequacies ... that he was unable even to file a complaint.

Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

So, under *Lewis*, this Court must determine whether Plaintiff has shown that he lost the ability to present an "arguably actionable claim." Here, Plaintiff has not even alleged that he was unable to pursue an "arguably actionable claim" as a result of Defendants' actions. All Plaintiff has alleged is that he received a misconduct for making threatening statements in a legal document that he filed with the Luzerne County Court. This is clearly insufficient to state a right of access claim. As a result, Plaintiff's First Amendment access to courts claim should be dismissed.

### 4. Sixth Amendment Right to Self-Representation Claim

Plaintiff has failed to adequately state the basis for his Sixth Amendment claim in his Third Amended Complaint, other than to make the bald assertion that Defendants have violated his right to self-representation. (Document # 32, Third Amended Complaint, at Section III). Thus, to properly construe this claim, reference must again be made to Plaintiff's inmate response to the September 14, 2006, misconduct, in which Plaintiff states:

> I have a constitutional right to self representation. On April 3, 2006, Judge Conahan issued an order stating that I have been representing myself and I can continue to represent myself. That I certainly am entitled to represent myself. As such I can represent and express myself in court and legal documents in any manner I chose [sic]....

(Document # 24, Exhibit L, p. 49).

From the foregoing, Plaintiff appears to be claiming that Defendants' actions in finding him guilty of a misconduct for essentially making threatening statements while representing himself in court has, somehow, violated his Sixth Amendment right to self-representation. However, Plaintiff has failed to demonstrate, or even allege, how Defendants' actions have interfered with his ability to represent himself, either in state court or before this Court. This

11

claim should, therefore, be dismissed.

### 5. Thirteenth Amendment Claim

Plaintiff also claims that Defendants have violated his Thirteenth Amendment rights, without providing any further support or explanation. The Thirteenth Amendment provides:

> Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
>
> Section 2. Congress shall have the power to enforce this article by appropriate legislation.

U.S. Const., amend. XIII. Based on the content of this Amendment and the allegations of the Third Amended Complaint, wherein no allegations of slavery are made, it is clear that Plaintiff has not and cannot state a claim for violation of his Thirteenth Amendment rights. Accordingly, this claim should be dismissed.

### 6. Fourteenth Amendment Due Process Claim

Plaintiff claims that his due process rights were violated when he was denied "the privilege of parole." To establish a due process claim under the Fourteenth Amendment, Plaintiff must demonstrate (I) the existence of a constitutionally protected liberty or property interest; and (ii) constitutionally deficient procedures by the state in its deprivation of that interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972). If there is no protected interest, there is no need to determine whether the alleged deprivation was without due process. Alvin v. Suzuki, 227 F.3d 101, 116 (3d Cir. 2000).

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious

deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Liberty interests that fall within this category include the revocation of parole, Morrissey v. Brewer, 408 U.S. 471 (1972), and the revocation of probation, Gagnon, 411 U.S. at 778. However, the granting of parole prior to the expiration of a prisoner's maximum term is not a constitutionally-protected liberty interest that is inherent in the Due Process Clause. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979).

Moreover, the Pennsylvania Probation and Parole Act, 61 Pa. Stat. 331.1, *et. seq.*, does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole prior to the expiration of their maximum terms.[2] Since Plaintiff does not have a constitutionally-protected liberty in release on parole that arises under state law, Plaintiff cannot support a claim based upon a violation of his due process rights related to the denial of parole.

Plaintiff claims further that the misconduct he received on September 14, 2006 was either unsubstantiated or fabricated. To the extent this claim alleges a violation of Plaintiff's due process rights under the Fourteenth Amendment, it also must fail. The filing of a misconduct, even if later proven to be false, "is not a constitutional violation so long as the inmate is provided with due process." Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D.Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992), cert denied, 510 U.S. 829 (1993)(citations omitted).

In this case, it is clear from Plaintiff's allegations that he was properly notified of the charges associated with the misconduct and was afforded a hearing. In addition, Plaintiff

---

[2]

See, e.g., McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993); Mickens-Thomas v. Commonwealth, Bd.. of Probation and Parole, 699 A.2d 792 (Pa. Commw. Ct. 1997) (parole is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy); Tubbs v. Pennsylvania Bd.. of Probation and Parole, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) ("it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term . . . the [Board] makes each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), appeal denied, 637 A.2d 295 (Pa. 1993).

availed himself of the opportunity to appeal the hearing examiner's decision.  Thus, Plaintiff was provided with all due process to which he was entitled.

Moreover, the Court notes that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolfe v. McDonnell, 418 U.S. 539, 556 (1974).  In the context of institutional misconduct hearings, "due process requires only that there 'be some evidence' supporting a disciplinary decision... and it is the hearing examiner's providence, and not this court's, to gauge the credibility of evidence and witnesses at a misconduct hearing." Rauso v. Vaughn, 2000 WL 873285 at * 8 (E.D.Pa. June 26, 2000), citing Massachusetts Correctional Inst. v. Hill, 472 U.S. 445, 455-56 (1985).

Here, Plaintiff does not dispute that he wrote and mailed the document containing the threatening statements for which he received the misconduct at issue.  Thus, there was, at least, "some evidence" to support Defendant Cole's disciplinary decision.  As a result, Plaintiff's claim that Defendants found him guilty of an unsubstantiated and/or fabricated misconduct fails to state a cognizable claim under the Fourteenth Amendment's Due Process Clause.

### 7. Fourteenth Amendment Equal Protection Claim

Plaintiff also states, in general terms, that Defendants violated his equal protection rights by finding him guilty of the misconduct at issue and by denying him parole as a result of the misconduct.

The Equal Protection Clause provides that no state shall "deny to any person ... the equal protection of its laws." U.S. Const. Amend. XIV, §1.  All persons "similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Artway v. New Jersey, 81 F.3d 135, 1267 (3d Cir. 1996).  "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994).

As a threshold matter, in order to establish an equal protection violation, the plaintiff must "...demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class." Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996).

Plaintiff's allegations in this regard fail as he has not specifically identified the group to which he is similarly situated. Instead, Plaintiff's equal protection claim is based solely on vague generalities that he has been treated unfairly. Therefore, Plaintiff has failed to state a claim upon which relief may be granted and this claim should be dismissed.

### 8. Privileges and Immunities Claim

Plaintiff generally claims that Defendants' actions "subjected him to loss of these rights, privileges and immunities." Thus, it appears that Plaintiff is attempting to assert a claim under Article IV, Section 2, Clause 1, of the United States Constitution, commonly known as the Privileges and Immunities Clause. In Sanez v. Roe, 526 U.S. 489, 500 (1999), the United States Supreme Court held that the Privileges and Immunities Clause encompasses three different rights: (1) the right of a citizen of one state to enter and to leave another state; (2) the right to be treated as a welcome visitor while temporarily present in the second state; and (3) the right to be treated like other citizens of that state once an individual elects to become a citizen of another state.

Plaintiff has not alleged that he is a citizen of another state and that he has been treated differently from other citizens of Pennsylvania with regard to any basic right. See, e.g., Paul v. Virginia, 75 U.S. 168 (1868). As a result, Plaintiff's claim under the Privileges and Immunities Clause should be dismissed.

### 9. Retaliation

Plaintiff claims that Defendants found him guilty of the September 14, 2006 misconduct

"to retaliate against [him] for what he said in his response petition in exercise of his constitutional rights...." (Document # 32, Third Amended Complaint, at p. 12).

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials[3]; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[4]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged

---

[3] To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

[4] In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

      The alleged constitutionally protected activities implicated here are Plaintiff's right to free speech and his right to access the courts. This Court has already determined that Plaintiff's threatening statements made within the context of his "response petition" were not a constitutionally protected form of speech under the First Amendment. Thus, Plaintiff cannot meet the first prong of his claim that he was retaliated against for exercising his constitutionally protected right of free speech.

      Plaintiff also cannot meet the first prong of his claim that he was retaliated against for engaging in the constitutionally protected activity of accessing the courts. Although the threatening statements at issue were made in the context of a legal document that was filed with the Luzerne County Court, Defendants' actions were not taken in retaliation for Plaintiff's action of filing a court document. Instead, Plaintiff was charged with, and found guilty of, a misconduct for making the threatening statements that were found within the legal document. As such, Defendants' actions were aimed at deterring Plaintiff from making written threats in the future, without regard to whether they are contained in an informal letter or a court document. Plaintiff's action of filing a response with the Luzerne County Court was not, at all, impacted by the misconduct of which he was ultimately found guilty.

      Because Plaintiff was not engaged in any constitutionally protected activity when he made the threatening statements for which he received a misconduct in September 2006, he cannot claim that Defendants' actions amounted to retaliation in violation of his constitutional rights. Thus, Plaintiff's retaliation claim should be dismissed.

**III.    CONCLUSION**

    For the foregoing reasons, it is respectfully recommended that:

        1.    The Motion to Dismiss filed by Defendant Luzerne County Children and Youth Services [Document # 39] be granted; and

        2.    The Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendants McConnell, Cole, Bitner, Brooks, Clark, Giroux, Mahlmeister, Pennsylvania Board of Probation and Parole, and "Unknown-Named Members" of the Pennsylvania Board of Probation and Parole [Document # 36] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. See e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

        /s/ Susan Paradise Baxter
        SUSAN PARADISE BAXTER
        Chief U.S. Magistrate Judge

Dated: February 28, 2008

cc:    The Honorable Maurice B. Cohill
       United States District Judge